IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN DEMARCO, *et al*,<br><br>*Plaintiffs*,<br><br>v.<br><br>FARMACEUTICALRX, LLC, *et al*,<br><br>*Defendants*. | Civil Action No. 2:22-cv-1164<br><br>Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiffs Brian DeMarco, Clint Goodenow, Mark Williams, Jason Hummel, and Alex Fitzgerald filed an Amended Complaint and Demand for Jury Trial ("Amended Complaint") against Defendants[1] FarmaceuticalRX, LLC; FRX Management Holdings, LLC; FRX Growth Partners, LLC; Rebecca L. Myers ("Myers"); Dietrich A. Stephan ("Stephan"); and Joy E. Bochner ("Bochner"). (ECF No. 10). At Count I and Count III, Plaintiffs bring claims for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. (*Id.*). At Count II, Plaintiffs bring a claim for violation of the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. Ann. § 333.104. (*Id.*). Plaintiffs allege that Defendants failed to pay them adequate overtime compensation in violation of the FLSA (Count I) and PMWA (Count II) and that Defendants "constructively discharged" them in retaliation for their complaints about Defendants' alleged FLSA and PMWA violations (Count III). Presently before the Court is Defendants' Motion to Dismiss Plaintiffs'

---

[1] Plaintiffs stipulated to the dismissal with prejudice of Defendants FRX Growth, LLC; FarmaceuticalRX Real Estate Pennsylvania, LLC; and FarmaceuticalRX GP of Pennsylvania, LLC (ECF No. 15), which the Court approved. (ECF No. 20).

1

Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] (ECF No. 16). For the reasons set forth below, Defendants' Motion to Dismiss Plaintiffs' Amended Complaint will be denied.

## I.  FACTUAL BACKGROUND

FarmaceuticalRX, LLC; FRX Management Holdings, LLC; and FRX Growth Partners, LLC (collectively "Corporate Defendants") are medical marijuana growing and processing companies licensed by the Commonwealth of Pennsylvania and the State of Ohio. (ECF No. 10, ¶ 29). Corporate Defendants each have the same principal place of business at 660 Martin Luther King Jr. Boulevard, Farrell, Pennsylvania 16121. (*Id.* ¶¶ 6-8). Myers, Stephan, and Bochner (collectively "Individual Defendants") each seemingly own a portion of Corporate Defendants and serve on Corporate Defendants' Board of Directors. (*Id.* ¶¶ 13-15). Additionally, Myers is Corporate Defendants' Chief Executive Officer ("CEO"); Stephan is Corporate Defendants' Chief Science Officer; and Bochner is Corporate Defendants' Director of Health and Wellness. (*Id.*). Plaintiffs allege that Individual Defendants each "supervised, exercised control over, and [were] responsible for the FLSA/PMWA violations and misclassification at issue in this case." (*Id.*). Plaintiffs worked as delivery drivers and were responsible for transporting Corporate Defendants' medical marijuana products from their facility in Farrell, Pennsylvania to licensed dispensaries in Pennsylvania. (*Id.* ¶ 32).

---

[2] Defendants uploaded the incorrect PDF version of their motion to dismiss, which sought the dismissal of the claims against FRX Growth Partners, LLC, Myers, Stephan, and Bochner. (ECF No. 16). Defendants subsequently filed an errata that joined FarmaceuticalRX, LLC and FRX Management Holdings, LLC to the motion to dismiss. (ECF No. 18). Plaintiffs argue that Defendants intended to file the original motion to dismiss as written and the errata was filed for the purpose of delaying the case. (*See* ECF No. 23, p. 3). Defendants will be afforded the benefit of the doubt and the Court will address their motion to dismiss the claims against all remaining defendants.

Plaintiffs were hired by Defendants "on an ongoing basis for a period of years of indefinite duration;" used Defendants' vehicles and equipment for transporting Defendants' products; and were covered by Defendants' insurance policies when providing transportation services for Defendants. (*Id.* ¶ 33). "Plaintiffs received paychecks and tax forms from FarmaceuticalRX, LLC and FRX Management Holdings, LLC." (*Id.* ¶ 26). According to Plaintiffs, Defendants had complete control over all aspects of Plaintiffs' work, including their work schedules. (*Id.* ¶ 33). Defendants classified Plaintiffs as independent contractors, and, as a result, did not pay Plaintiffs overtime compensation when they worked over 40 hours in a week. (*Id.* ¶ 34). Plaintiffs contend that, under the FLSA and PMWA, they should have been classified as "employees" of Corporate Defendants—each of which, according to Plaintiffs, "collectively constitute a Single and/or Joint Employer." (*Id.* ¶¶ 18, 33).

In the early stages of performing transportation services for Defendants, "Plaintiffs regularly complained to Defendants about their misclassification as independent contractors and the failure to pay them overtime compensation." (*Id.* ¶ 36). According to Plaintiffs, Defendants made promises to correct Plaintiffs' alleged misclassification, but never did so. (*Id.* ¶ 37). Plaintiffs allege that "Defendants claimed that they could not correct the misclassification and overtime issues mid-year because it would look suspicious and would trigger an audit of Defendants' books by the Internal Revenue Service." (*Id.* ¶ 38). This issue was the subject of "extensive meetings over an extended period among Defendants' senior-level management, owners, and officers." (*Id.* ¶ 39). Plaintiffs continued to complain about their alleged misclassification and resulting lack of overtime compensation. (*Id.* ¶ 40). In early May 2022, "Defendants held a meeting in which Plaintiffs were informed that, if they wanted to continue working for Defendants, they were required to 'reapply' for employment as W-2 employees" at

reduced wage rates. (*Id.* ¶ 41). According to Plaintiffs, Defendants had already sought out Plaintiffs' replacements before the May 2022 meeting. (*Id.* ¶ 42).

## II. LEGAL STANDARD

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

### III.   ANALYSIS

Counts I and II of Plaintiffs' Amended Complaint allege that Defendants misclassified Plaintiffs as independent contractors and violated the FLSA and PMWA's[3] requirement that employers must pay employees time and half their regular rate for all hours worked above forty hours per week unless an exemption applies. *See* 29 U.S.C. § 207(a)(1); 43 Pa. Stat. Ann. § 333.104(c).[4] Count III of Plaintiffs' Amended Complaint alleges that Defendants violated the FLSA's prohibition against an employer discharging an employee for filing a complaint or instituting a proceeding against the employer for alleged FLSA violations. *See* 29 U.S.C. § 215 (a)(3).

Much of the parties' briefing is concerned with whether the six defendants can be considered one employer under the "single employer theory" or the "joint employer theory." However, because the relevant statutory provisions apply only to "employees," all of Plaintiffs' claims depend on an initial showing that they were acting as "employees"—as opposed to independent contractors—under the FLSA and PMWA. *See Thompson v. Real Est. Mortg. Network*, 748 F.3d 142, 148 (3d Cir. 2014); *Davis v. Abington Mem'l Hosp.*, 817 F. Supp. 2d 556,

---

[3] Because the PMWA "substantially parallels" the FLSA, the two statutes are interpreted and analyzed together. *Levitt v. Tech. Educ. Servs., Inc.*, No. 10-CV-6823, 2012 WL 3205490, at *3 (E.D. Pa. Aug. 7, 2012); *see also Baum v. Astrazeneca LP*, 372 F. App'x 246, 248 (3d Cir. 2010); *Com., Dep't of Lab. & Indus., Bureau of Lab. L. Compliance v. Stuber*, 822 A.2d 870, 873 (Pa. Commw. Ct. 2003), aff'd sub nom. *Com. v. Stuber*, 859 A.2d 1253 (2004) ("[D]eference is properly given to the federal interpretation."). The Court's analysis will largely focus on the FLSA but applies with equal force to the PMWA.

[4] To state an overtime claim under the FLSA, "a plaintiff must allege that: (1) the defendant was 'engaged in commerce' as that phrase is defined by the FLSA; (2) the plaintiff was an 'employee' as defined by the FLSA; and (3) the plaintiff worked more than forty hours in a week but was not paid overtime compensation for the hours worked in excess of forty." *Rummel v. Highmark, Inc.*, No. 3:13-CV-87, 2013 WL 6055082, at *3 (W.D. Pa. Nov. 15, 2013). *See also* 29 U.S.C. § 207(a)(1). Only the second element—whether Plaintiffs were "employees" under the FLSA—is at issue here.

564 (E.D. Pa. 2011) ("[T]he Court cannot assess whether a joint-employer relationship exists without facts alleging the basic terms of the primary employment-employer relationship."). If—based on the standards set forth by the United States Court of Appeals for the Third Circuit—Plaintiffs were properly classified as independent contractors, Defendants will not be liable (jointly or otherwise) for the alleged statutory violations.

### A. Plaintiffs Have Sufficiently Pled the Existence of an Employer-Employee Relationship.

Under the FLSA, "employer" is defined expansively as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). The FLSA's definitions concerning employment status are intentionally and necessarily broad in order to effectuate the statute's remedial purpose of abolishing substandard labor conditions. *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991). How the worker is labeled or classified is not dispositive, though it "may serve as evidence of what the actual practice or working relationship is." *Williams v. Jani-King of Philadelphia Inc.*, 837 F.3d 314, 323 (3d Cir. 2016); *see also Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947) ("Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the [FLSA].").

"There is no single test to determine whether a person is an employee or an independent contractor for purposes of the FLSA." *Martin,* 949 F.2d at 1293. Instead, courts consider "the total employment situation and the economic realities of the work relationship." *In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 683 F.3d 462, 469 (3d Cir. 2012) (internal quotations omitted). In doing so, courts consider the following six factors:

> (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4)

>whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; (6) whether the service rendered is an integral part of the alleged employer's business.

*Martin,* 949 F.2d at 1293. No single factor is dispositive and "a court should consider them together in the 'circumstances of the whole activity' to determine whether the worker is 'dependent upon the business to which [she] render[s] service' or is, 'as a matter of economic reality,' operating an independent business for herself." *Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 230 (3d Cir. 2019) (quoting *Martin,* 949 F.2d at 1293).

The first factor of the economic realities test—the degree of Plaintiffs' right to control the manner in which the work is to be performed—weighs in favor of employee status. When analyzing the control factor, courts assess "the degree of supervision over the worker, control over the worker's schedule, and instruction as to how the worker is to perform his or her duties." *Bamgbose v. Delta–T Grp., Inc.*, 684 F. Supp. 2d 660, 669 (E.D. Pa. 2010). Plaintiffs claim that Defendants managed the day-to-day supervision and disciplining of Plaintiffs; controlled Plaintiffs' work schedule, compensation, and benefits; subjected Plaintiffs to numerous policies; and promulgated work rules and assignments. (ECF No. 10 ¶¶ 22-24).

The second factor—Plaintiffs' opportunity for profit or loss depending on their managerial skill—also weighs in favor of employee status. "The profit and loss factor 'centers on whether [the plaintiff] had meaningful opportunities for profit or any significant risk of financial loss, depending upon his managerial skill.'" *Pendleton v. JEVS Hum. Servs., Inc.*, 463 F. Supp. 3d 548, 566 (E.D. Pa. 2020) (quoting *Cherichetti v. PJ Endicott Co.*, 906 F. Supp. 2d 312, 317 (D.Del. 2012)). Generally, this factor weighs in favor of a worker being classified as an independent contractor if "the worker's earnings are tied to his performance or when the putative employee makes a capital investment that may be lost if the business does not succeed." *Id.* (citing *Martin,*

7

949 F.2d at 1294). Plaintiffs were paid a wage for transporting Defendants' products and there is no indication that Plaintiffs' earnings were tied to their performance or to the performance of Defendants' business.

The third factor—Plaintiffs' investment in equipment, materials, and employment of helpers—"is interrelated to the profit and loss consideration." *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1537 (1987). As with the profit and loss factor, the third factor weighs in favor of employee status. Plaintiffs claim that they "utilized Defendants' vehicles and equipment for transporting Defendants' medical marijuana products" and nothing in the pleadings suggests that Plaintiffs hired any helpers. (ECF No. 10, ¶ 33).

The fourth factor of the economic realities test—whether the services provided by Plaintiffs required special skill—also weighs in favor of employee status. In evaluating this factor, a court looks at whether the alleged employees have "the skills necessary to locate and manage discrete work projects characteristic of independent contractors, or whether the skills are of the task-specific, specialized kind that form a piece of a larger enterprise, suggesting employee status." *Li v. Renewable Energy Solutions, Inc.*, 2012 WL 589567, *9 (D.N.J. Feb. 22, 2012). Plaintiffs worked for Defendants "out of their facility in Farrell, Pennsylvania as [d]rivers and were responsible for transporting medical marijuana products to licensed dispensaries located in Pennsylvania." (ECF No. 10, ¶ 32). Nothing in the Amended Complaint indicates that Plaintiffs were required to have any specialized training or licensing to perform their work for Defendants.

The fifth factor—the permanence of Plaintiffs' working relationship with Defendants—weighs in favor of employee status. This factor "turns on two considerations: (1) whether the employee had a set term with the employer, and (2) whether the employee also took outside work." *Jimenez v. Best Behavioral Healthcare*, Inc., 391 F. Supp. 3d 380, 391 (E.D. Pa. 2019) (citing

*Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1387 (3d Cir. 1985)). According to Plaintiffs, they did not have a set term of employment with Defendants, but "they were employed on an ongoing basis for a period of years of indefinite duration[.]" (ECF No. 10, ¶ 33). Plaintiffs also claim that they regularly worked over 40 hours per week for Defendants and that they worked as drivers exclusively for Defendants' business. (*Id.* ¶¶ 33, 62). Because "the duration of the relationship is less significant than the hours worked and the exclusivity of the working arrangement[,]" this factor weighs in favor of Plaintiffs being classified as employees. *Smith v. Effluent Retrieval Servs. Inc.*, No. 16-654, 2016 WL 6135573, at *5 (E.D. Pa. Oct. 21, 2016) (internal quotations omitted).

The sixth and final factor—whether the services provided by Plaintiffs were an integral part of Defendants' business—also weighs in favor of employee status. "[W]orkers are more likely to be 'employees' under the FLSA if they perform the primary work of the alleged employer." *Donovan,* 757 F.2d at 1385. While transportation of Defendants' product is not the "primary work" of Defendants' business, delivery of Defendants' medical marijuana to its clients is certainly a necessary—or integral—part of the business.

With each of the economic reality test's six factors weighing in favor of Plaintiffs being classified as employees rather than independent contractors, the Court holds that Plaintiffs have pled facts sufficient to support a reasonable inference that an employer-employee relationship existed. As the Defendants point out, the Amended Complaint does not contain particularized allegations about Plaintiffs' alleged employment relationship with each Defendant. (*See* ECF No. 19, p. 10) ("By grouping Defendants together and referring to them collectively throughout the Amended Complaint, Plaintiffs underscore the insufficiency of their pleading."). The Court recognizes, however, "that 'the precise contours of an employment relationship can only be

9

established by a careful factual inquiry' and, thus, discovery is often necessary before a plaintiff can reliably define the contours of the employment relationship." *Anderson v. Finley Catering Co.*, 218 F. Supp. 3d 417, 422–23 (E.D. Pa. 2016) (quoting *Graves v. Lowery*, 117 F.3d 723, 729 (3d Cir. 1997)). Where, as here, "the employment relationship is ambiguous or uncertain, such a fact-intensive analysis is essential, and the plaintiff's claims should not be dismissed at the pleading stage." *Hayes v. Waddell & Reed, Inc.*, No. CA 12-293, 2013 WL 5434139, at *9 (W.D. Pa. Sept. 26, 2013) (citing *Graves*, 117 F.3d at 729); *see also Hamilton v. Steadfast Constr., LLC*, No. 2:20-CV-150, 2020 WL 12517273, at *2 (W.D. Pa. Oct. 20, 2020) ("The Court recognizes that [defendant] factually disputes the contention that [plaintiff] was its employee. It will have the opportunity to do so. [The motion to dismiss stage], however, is not the time."); *Braden v. Cnty. of Washington*, No. CIV. A. 08-574, 2008 WL 5129919, at *3 (W.D. Pa. Dec. 5, 2008) ("Such facts as who [Plaintiffs'] employer was and the structure of [their] employment are the types of facts that must be uncovered through discovery.").

### B. Single Employer Theory and Joint Employer Theory

Having held that Plaintiffs have sufficiently pled the existence of an employer-employee relationship, the Court turns to Plaintiffs' claim that "Defendants collectively constitute a Single Employer and/or Joint Employer of Plaintiffs." (ECF No. 10 ¶ 18). Under two different theories—the "single employer theory" and the "joint employer theory"—multiple legally separate entities can be considered a single employer for employment claims. *See Nesbitt v. Gears Unlimited, Inc.*, 347 F.3d 72, 87 (3d Cir. 2003); *Xiao v. Sichuan Gourmet LLC*, No. 2:21-CV-00482, 2022 WL 819096, at *4 (W.D. Pa. Mar. 18, 2022). "Both the joint employer and the single employer doctrines involve fact-intensive analyses which are generally inappropriate at the motion to dismiss stage." *Hayes*, 2013 WL 5434139 at *9; *see also Hartman v. Chestnut Hill Coll.*, No.

CIV. A. 00-1400, 2000 WL 1016655, at *2 (E.D. Pa. July 7, 2000) ("Although these allegations do not specifically bring defendant . . . into a 'single employer' or 'joint employer' role with the other defendants, it would be premature to dismiss the complaint, because these allegations, when taken in a light most favorable to plaintiff, could lead a reasonable mind to believe that defendant . . . was in fact a "single employer" or a 'joint employer.'"). Nevertheless, Plaintiffs still must plead sufficient facts to support a reasonable inference that Defendants were operating as Plaintiffs' "single employer" or "joint employer" under the FLSA.

1. Single Employer Theory

Multiple entities may constitute a single employer where the entities are nominally independent but in practice operate as one integrated enterprise. *Xiao,* 2022 WL 819096 at *4 (citing *NLRB. v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982)). In evaluating whether multiple companies constitute a "single employer," the Third Circuit "considers the level of interrelation of operations, whether there is shared common management, whether labor relations are under centralized control, and whether there is common ownership or financial control." *Id.* at *8 (citing *Nesbit,* 347 F.3d at 84).

According to the Amended Complaint, Corporate Defendants share the same principal place of business located at 660 Martin Luther King Jr. Boulevard, Farrell, Pennsylvania 16121. (ECF No. 10, ¶¶ 6-8). Additionally, Corporate Defendants all operate in the medical marijuana business; have common ownership; and share a board of directors, a CEO, a chief science officer, and a director of health and wellness. (*See id.* ¶¶ 13-15). Although a final evaluation of the single employer issue will require details about Corporate Defendants' organizational structure and operations, these allegations are sufficient to support a reasonable inference that Corporate Defendants were acting together as a "single employer."

2. <u>Joint Employer Theory</u>

Plaintiffs also argue that all six defendants —Corporate Defendants and Individual Defendants—should be treated as one employer under the "joint employer theory." "[J]oint employment status [can exist] when two [or more] entities exercise significant control over the same employees." *Graves,* 117 F.3d at 727. Individual owners, officers, or supervisors may also be considered "joint employers" when acting "in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d); *see also Real Est. Mortg. Network,* 748 F.3d at 153 ("Aside from the corporate entity itself, a company's owners, officers, or supervisory personnel may also constitute 'joint employers' for purposes of liability under the FLSA."). In determining whether a joint employment relationship exists under the FLSA, four factors are particularly relevant:

> (1) the alleged employer's authority to hire and fire the relevant employees; (2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; (3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and (4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.

*In re Enter. Rent-A-Car,* 683 F.3d at 469. "[T]hese factors do not constitute an exhaustive list of all potentially relevant facts, and should not be 'blindly applied.'" *Id.* Additionally, "[n]o single factor is dispositive and a weak showing on one factor may be offset by a strong showing on the other two." *Myers v. Garfield & Johnson Enters., Inc.,* 679 F.Supp.2d 598, 608 (E.D. Pa. 2010).

Plaintiffs' Amended Complaint includes several facts suggesting a joint employment relationship among Corporate Defendants. According to Plaintiffs, after issuing regular complaints about being classified as independent contractors, "Defendants held a meeting in which Plaintiffs were informed that, if they wanted to continue working for Defendants, they were required to 'reapply' for employment as W-2 employees and would receive severely reduced wage

rates for the same work." (ECF No. 10, ¶ 41). Accepted as true, these allegations clearly establish that Defendants had the authority to fire Plaintiffs and had some control over Plaintiffs' wages. Plaintiffs also claim that, at the time of that meeting, Defendants had already "sought to pre-emptively hire replacements for Plaintiffs[,]" clearly supporting a reasonable inference that Defendants had the ability to hire new workers. (*Id.* ¶ 42). Additionally, according to the Amended Complaint, Plaintiffs "received paychecks and tax forms from FarmaceuticalRX, LLC and FRX Management Holdings, LLC[]", and were covered by Defendants' insurance policies when transporting Defendants' medical marijuana products[.]" (*Id.* ¶¶ 26, 33). These allegations indicate that Defendants controlled Plaintiffs' employee records.

As with the single employer issue, Plaintiffs will ultimately need more details about Corporate Defendants' structure and operations to prove that Corporate Defendants were acting as "joint employers." At this stage, however, these factual allegations, when taken as true and viewed in the light most favorable to Plaintiffs, are sufficient to support a reasonable inference that Corporate Defendants were acting as a "joint employer." *See Hayes,* 2013 WL 5434139 at *9 ("At the motion to dismiss stage, it need not be 'entirely clear' that the factual allegations in the plaintiff's complaint will ultimately prove 'joint employer' status.").

Outside of pleading each Individual Defendants' ownership status, title, and conclusory allegations that each Individual Defendant "supervised, exercised control over, and was responsible for the FLSA/PMWA violations and misclassification at issue in this case[,]" the Amended Complaint contains no allegations specific to any Individual Defendant. (ECF No. 10, ¶¶ 13-15). Nevertheless, the allegations in the Amended Complaint are sufficient to support a reasonable inference that Individual Defendants could be a "joint employer" within the meaning of the FLSA.

Plaintiffs claim that, after they issued regular complaints about being classified as independent contractors, Defendants promised to correct the misclassification. (*Id.* ¶ 37). According to the Amended Complaint, "Defendants provided Plaintiffs with repeated excuses for the misclassification and failure to pay overtime. On one occasion, Defendants claimed that they could not correct the misclassification and overtime issues mid-year because it would look suspicious and would trigger an audit of Defendants books by the Internal Revenue Service[.]" (*Id.* ¶ 38). These communications ultimately were "the subject of extensive meetings over an extended period among Defendants' senior-level management, owners, and officers." (*Id.* ¶ 39).

It is reasonable to infer that high-ranking officials—especially the CEO—would exercise significant control over employment decisions, particularly when those decisions are prompted by persistent worker complaints, involve multiple meetings with management, and result in workers being asked to reapply under a different classification. *See Perez v. Davis Design & Dev., Inc.*, No. CIV.A. 13-1118, 2013 WL 6835095, at *5 (W.D. Pa. Dec. 23, 2013) ("Given that Mr. Davison is in fact the CEO of the company, it is hard to believe that Mr. Davison did not exercise substantial authority over the hiring and firing decisions of Davison's employees[.]"). Whether Stephan—as the chief science officer—or Bochner—as the director of health and wellness—were involved in handling these issues will require more factual development regarding the companies' management structure and the scope of each Individual Defendants' authority and specific involvement. Because Plaintiffs may not have access to these facts prior to discovery, the issues are best decided at a later stage of litigation. *See id.* ("To the extent that [defendant] argues that he did not control employee work schedules or the conditions of employment, such factual issues about the internal structure of [defendant's] management are properly determined at summary judgment or trial rather than via judgment on the pleadings."); *Thompson v. U.S. Airways, Inc.*,

717 F. Supp. 2d 468, 479 (E.D. Pa. 2010) (holding that, despite a thin factual record, "[p]laintiffs [had] satisfied the notice pleading standard, and [that] it would be inappropriate for the Court to dispose of all of [p]laintiffs' claims against [defendant] before any discovery has been conducted."). At the present stage, Plaintiffs have sufficiently pled facts to support a reasonable inference that Individual Defendants—as owners, members of the board of directors, and company executives—are liable under the FLSA and PMWA as "joint employers."

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 16) will be denied. An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

3/7/23
Dated